## McClure's Estate.

*Will—Construction—Power of appointment—Vested and contingent estates.*

Testatrix by her will gave to her nephew her own estate if he should be living at the time of her death, and also an interest in the estate of her mother over which she had power of appointment "if he should be living at the time of my decease." By a subsequent clause she provided that "in case my nephew shall die prior to my own decease, or in case he shall die before my estate is fully settled up by my executor, and before the proceeds of my said estate shall have been paid over to my nephew as herein provided then and in that case I do direct that all of my estate together with all interest in and a right to devise will, or give the same arising in or to the will of my mother which shall then remain in the custody of my executor, and which has been herein bequeathed to my nephew, shall be given, devised and bequeathed, and by my executor paid over to my six first cousins," naming them. The nephew died within a few months after his aunt's death, without hav-

ing received anything under the latter's will. *Held*, that no estate vested in the nephew, and that the six cousins were entitled both to the estate of the testatrix, and to the interest in her mother's estate over which she had power of appointment.

Argued May 11, 1908. Appeal, No. 284, Jan. T., 1907, by Nina M. Hall, Administrator c. t. a., of the estate of Humes Hall, deceased, from decree of O. C. Union Co., May T., 1904, No. 12, sustaining exceptions to auditor's report in Estate of Elizabeth H. McClure, deceased. Before FELL, BROWN, MES-TREZAT, POTTER and ELKIN, JJ. Affirmed.

Exceptions to report of Philip B. Linn, Esq., auditor.

AUTEN, J., specially presiding, filed the following opinion :

After making a number of specific bequests the will of Elizabeth H. McClure, deceased, provides : " As to the rest, residue and remainder of my estate, whether real, personal or mixed, including and intended to include all moneys, rights and credits, or the proceeds thereof, shall be invested by my executrix hereinafter named for the sole use and benefit of my said daughter, Caroline H. McClure, during the term of her natural life, so that she, my said daughter, shall receive the full annual interest, proceeds or income arising therefrom, and also so much of the said principal sum as may be necessary or requisite to maintain her, my said daughter, in as comfortable a manner and style as she has been accustomed to live in during my life. And further, I do direct that my said daughter, Caroline H., shall have full power to dispose of by will, by gift, or in any other way of the one-half of such moneys, credits, or rights or such investments into which they may have been converted at the time of her death or prior thereto."

The testatrix died April 17, 1892, and her will was duly probated May 20, 1892, letters testamentary thereon being granted to her daughter, the said Caroline H. McClure, executrix therein named. At the date of her death, the residuary estate of the testatrix consisted of a single item, a bond dated October 11, 1878, drawn by E. C. Humes, conditioned for the payment of $10,850.66, upon which there was due April 17, 1892, including interest, the sum of $11,170.76.

Accountant contends that under the terms of the clause of

the will quoted, Caroline H. McClure took an absolute estate in the one-half of the residuary of the estate of Elizabeth H. McClure, deceased. The auditor, however, has found that " Caroline H. McClure, by the terms of the will of Elizabeth H. McClure, as executrix thereof, took an estate for life in the whole of the ' rest, residue and remainder ' of her mother's estate, with the right to receive so much of the said principal sum as may be necessary or requisite to maintain her in as comfortable a manner and style as she had been accustomed to live in; with the further right or power to dispose of by will, or by gift or in any other way of the one-half of such money, credits, or rights or such investments into which they may have been converted at the time of her death or prior thereto." In other words, as we understand the auditor, he has found that Caroline H. McClure took an estate for life in entire residuary of her mother's estate, with the power of the consumption and power of appointment over one-half of said " rest, residue and remainder." In this conclusion we entirely concur, and are of opinion that the authority of Tyson's Estate, 191 Pa. 218, fully justifies this finding.

Caroline H. McClure died October 24, 1904, testate; her will, bearing date September 1, 1904, was duly probated October 27, 1904, and letters testamentary were granted to Hamilton B. Humes, the executor therein named, who is also the present accountant.

By her will it is, inter alia, thus provided : " Fifth :—I do direct that my executor hereinafter named shall sell all of my real estate at either public or private sale, either as a whole or in parts as in his judgment and discretion shall be for the best interests of my estate. In order that my said real estate shall not be hurriedly or hastily sold or offered for sale, I do hereby direct that my said executor shall not be required to close up or make an accounting upon my estate for the term of five (5) years from the time of my decease, and to this end and for this purpose I do direct that my said executor shall not be required to sell my real estate prior to a period of four (4) years and six (6) months after my decease if, in his judgment and the exercise of his discretion, it may appear for the best interests of my estate to thus postpone the final settlement thereof and for the due and proper conveyance of my real

estate to the purchaser and purchasers thereof, I do hereby authorize and empower my executor to make, execute and deliver to the purchaser or purchasers of said real estate good and sufficient deed or deeds therefor in fee simple.

" Sixth :—I do direct that all of my notes, bonds, stocks, mortgages, and other evidences of money due or belonging to me be disposed of or collected by my said executor and the same converted into money by him at such time or times as he may deem for the best interest of my estate within the period above mentioned and the proceeds of the same together with the net proceeds of my real estate after the payment by my executor of all debts, expenses, charges and commissions together with all collateral inheritance and other taxes, being first deducted therefrom to be paid over to my nephew Humes Hall if he shall be living at the time of my decease subject to all of the provisions and conditions of this my Last Will and Testament.

" Seventh :—I do give, devise and bequeath unto my nephew, Humes Hall, if he be living at the time of my decease, all of the interest in the estate of my mother, Elizabeth H. McClure, deceased, devised and bequeathed to me with power in me to dispose of the same either by will or gift, being one-half of the residuary of my said mother, Elizabeth H. McClure.

" Item :—I do further direct that in case my nephew Humes Hall shall die prior to my own decease or in case he shall die before my estate is fully settled up by my executor hereinafter named and before the proceeds of my said estate shall have been paid over to my nephew Humes Hall, as herein provided, then and in that case I do direct that all of my estate together with all interest in and the right to devise, give or will the same arising in and through the will of my mother, Elizabeth H. McClure, deceased, which shall then remain in the custody of my executor and which has has been herein bequeathed and devised to my nephew Humes Hall shall be given, devised and bequeathed and by my executors paid over to my six first cousins, namely :—William P. Humes, Mira Humes, Maria Humes Roberts, Caroline Humes Gilmore, Rachel Humes Allison and Hamilton B. Humes, share and share alike, to them, their heirs and assigns forever."

Thus it appears that Caroline H. McClure exercised the power

of appointment conferred upon her under the terms of the will of Elizabeth H. McClure, deceased. The auditor has found that "by the provision of the will of Elizabeth H. McClure, and the exercise of the power of appointment in the will of Caroline H. McClure immediately upon the death of the latter, Humes Hall took a vested estate in all of the estate or interest in the estate of Elizabeth H. McClure, deceased, over which Caroline McClure had the power of disposition or appointment, either by will, gift or otherwise, being the one-half of the residuary of the estate of Elizabeth H. McClure; and this estate was not divested."

To our mind this finding raises the most important point for determination, and to it the learned auditor has given careful consideration, and has cited a number of authorities to sustain his position. However, apart from the enunciation of rules of construction, precedents are of little value in contests of this kind.

Mr. Justice SHARSWOOD says in Provenchere's Appeal, 67 Pa. 463 : " There are no arbitrary or unbending rules in the construction of the words of a will. No two wills are in all respects alike. Where indeed the same precise form of expression occurs as may have been the subject of some former adjudication, unaffected by any indication of a different intention in other parts of the instrument, the courts, with a view to certainty and stability of titles, will follow the precedent. Counsel can thus be enabled to advise with confidence. Nevertheless, the cardinal canon still holds good, that the intention of the testator of each will separately is to be gathered from its own four corners. Hence almost every general rule has its recognized special exceptions, with exceptions to such exceptions which bring us back to the general rule again, and this may be and sometimes has been carried even further in the vain attempt to generalize and classify all the decisions upon this most difficult and doubtful subject—the ascertainment of the intention from the words of a man, who in many cases had no intention at all, the question not being present in his mind at the time the words were used. These remarks are particularly applicable to the controversies which have arisen as to whether future legacies give present vested or contingent interests."

In ascertaining whether or not a legacy is contingent or vested, and if vested, whether it was subsequently divested, the cardinal rule is that the intention of the testator must govern, if legal, and that this intention must be gathered from the four corners of the will. This rule is familiar; the difficulty arises in its application. In order to give proper effect to the will of Caroline H. McClure we are to endeavor to ascertain her real intentions from the words of the instrument, and not blindly follow precedents, which at best give but a dim side light upon the question. And in trying to discover what she really means from the language she employs, it might be well to consider her will in the light of an ordinary letter or other written communication. What does she say? She directs that, in order that her real estate shall not be hurriedly or hastily sold or offered for sale, her executor shall not be required to close up or make an accounting upon her estate for the term of five years after her decease and that to this end he shall not be required to sell her real estate prior to a period of four years and six months after her death; that he shall dispose of or collect and convert into money her notes, bonds, mortgages, etc., at such time or times as he may deem to the best interests of her estate, within the period above mentioned, and pay the proceeds of the same and the net proceeds of all her real estate over to her nephew, Humes Hall, " If he shall be living at the time of my decease, subject to all the provisions and conditions of this, my last will and testament." She further writes that she bequeaths to her nephew, Humes Hall, that part of the estate of her mother, Elizabeth H. McClure, deceased, over which she had the power of appointment, if he be living at the time of her decease. If Humes Hall had been living at the date of the settlement of Caroline H. McClure's estate, the question we are now discussing could not have arisen. He died, however, about four months subsequent to the date of the death of Caroline H. McClure and before her estate was settled.

In a subsequent item of the will she writes that in case Humes Hall should die prior to her own decease, or in case he should die before her estate was fully settled up by her executor, and before the proceeds of her estate were paid over to Humes Hall, then all of her estate, together with all the

interest in the estate of her mother, Elizabeth H. McClure, over which she had a power of appointment, should go to her six first cousins above named. In effect she says to her executor : "If Humes Hall shall be living when my estate shall have been settled up, he shall receive from my own estate the legacy contained in clause six of my will and also the residuary part of my mother's estate over which I have a power of appointment, as declared in the seventh clause ; you shall have five years in which to settle my estate and make an account thereof, and if Humes Hall shall not be living at the accomplishment of that event within the time prescribed, he shall not be entitled to anything which I have bequeathed to him in the sixth and seventh clauses, but you shall pay the same to my six first cousins." It seems to us that her language is plain and is susceptible of only one meaning : that it is only when we place a strained construction upon her words as the result of an effort to apply precedents we can arrive at any other conclusion. In Wengerd's Estate, 143 Pa. 615, the Supreme Court say, "The doctrine of this state, from the time of Corbin v. Wilson, 2 Ash. 178, has uniformly been that a bequest of personal property relates to the time of the testator's death, unless a contrary intent is clearly indicated in the will. 'If any immediate legacy is given without specifying a time for payment, and is given over in case the legatee dies before it becomes payable, the word, payable, can only have reference to the death of the testator.'" Caroline H. McClure fixes a definite, determinate period at which Humes Hall shall receive her bounty, provided he be then living. This she had an absolute right to do under the power of appointment conferred by her mother. We have no right to impute to her an intention contrary to the one expressed in plain and unequivocal language. With the wisdom or unwisdom of the provisions of her will, we have nothing to do. We are not permitted to make a will for her nor to depart one iota from her plainly declared intentions. In support of his finding, the auditor relies largely upon Muller's Estate, 19 W. N. C. 320, and Wengerd's Estate, supra. In Muller's Estate, however, the legacy was payable immediately upon the death of the testator, and in Wengerd's Estate the provision was that, "In case of the death of any of said children of my son David before the

payment to them of their said shares, then to be divided between the survivors." That was a case of an immediate legacy being given without a specific time for payment. Both of these cases, therefore, differ materially from the one now under consideration. Caroline H. McClure has stated a fixed time for payment, to wit: when her estate shall have been fully settled.

Stress is laid upon the fact that Caroline H. McClure had no debts and that the accountant, being one of the six first cousins named, profits in the event of this legacy not going to Humes Hall. It will be recollected, however, that Caroline H. McClure had an undivided interest, at least, in real estate and that she for reasons expressed in her will, specified a time within which the executor was not obliged to sell her real estate. Surely, therefore, the accountant cannot be charged with delay to the disadvantage of Humes Hall, when the death of the latter followed so soon that of Caroline H. McClure.

In Raleigh's Estate, 206 Pa. 451, the testator was largely indebted; his will provided that, "upon the death of my wife, my executors shall divide my entire estate into as many equal portions as I shall have children living or that should be represented by lawful heirs, and make a plain and clear statement of the division, describing the properties and numbering each lot or share, and have them of as near equal value as possible, then make the distribution," etc. He died January 10, 1882. The debts were fully paid October 1, 1900; James Raleigh, a son, died September 26, 1896, leaving a widow and one child. The Supreme Court says: " In the present case there was no gift of any part of the testator's estate (except legacies of $100 a month to his widow and $25.00 a month to each of his children), ' until all my debts shall be paid and business settled up,' or as he puts it again, ' after my business is closed up and all my debts paid.' The earliest point of time, therefore, at which it could possibly be held that the legacy to James Raleigh of a distributive share in the estate could take effect, would be the date of the final closing of business and payment of testator's debts. This date was October 1, 1900. But James Raleigh died September 26, 1896, long before that date. Therefore, no interest in the share of the estate bequeathed to him ever became vested in him." The language here used to fix a time for the payment of the legacy to James Raleigh is no

more definite or precise than that employed by Caroline H.
McClure.    As said by Judge Ashman in the Shelmerdine's
Estate, 16 Pa. Dist. Rep. 222: "The law favors vested interests,
but the tendency of modern cases is to escape from purely
technical rules of construction in furtherance of vesting, which
as often as not defeat the actual intention of a testator."    It
should be remembered, too, that Humes Hall was the nephew
of Caroline H. McClure, and, therefore the presumption that
the legacy was intended to be vested, applies with far less
force than would one given to a child or grandchild, by a tes-
tator.

We are of opinion that the legacies devised to Humes Hall
under the seventh clause of the will of Caroline H. McClure,
deceased, should go to the six first cousins, William P. Humes,
Mira Humes, Maria Humes Roberts, Caroline Humes Gilmore,
Rachel Humes Allison and Hamilton B. Humes, under the
subsequent "Item" of her will, and that the same should be
awarded to them in the distribution of the estate of Elizabeth
H. McClure, deceased, the power to make such distribution
being fully justified by the authorities cited on that point by
the learned auditor.

If we are wrong in our view as to the proper legatees, then
the "Item" following the seventh clause of Caroline H. Mc-
Clure's will was wholly unnecessary as well as meaningless,
and its presence can only be accounted for on the theory ex-
pressed by Mr. Justice Sharswood in Provenchere's Appeal,
67 Pa. 463, that it is a case where the testatrix had no inten-
tion at all.

All exceptions not sustained by this opinion are dismissed.

The report is referred back to the auditor with direction to
award distribution in accordance with this opinion.

*Error assigned* was in sustaining exceptions to auditor's
report.

*John G. Johnson* and *William R. Follmer*, with them *T. K.
Van Dyke*, for appellants.—Time was not annexed to the leg-
acy and therefore Humes Hall took a vested estate in that
interest in the estate of Elizabeth H. McClure.    If there was
any postponement, it was attached to the time of payment and

not to the person of the legatee, and where the bequest is im-
mediate and payment postponed the legacy is vested. The
gift of the legacy was independent of the direction in regard
to the time of payment to the legatee, and for that reason
it is apparent that the testator intended that the legacy
should vest. If the gift had been conditioned upon the
legatee's reaching a given age, it would have been contingent:
Cooper v. Scott, 62 Pa. 139; Little's App., 117 Pa. 14; Moore
v. Smith, 9 Watts, 403; Snyder's Est., 180 Pa. 70; Bowman's
App., 34 Pa. 19; Wengerd's Est., 143 Pa. 615; Sheetz's App.,
82 Pa. 213; Phillips's Est., 205 Pa. 504; Newbold v. Boone,
52 Pa. 167; Mutter's Est., 38 Pa. 314.

*John G. Reading*, with him *Alfred Hayes*, for appellees.

Opinion by Mr. Justice Mestrezat, May 25, 1908:

We need not determine whether Caroline McClure took an
absolute estate or a life estate with a general power of appoint-
ment in the one-half of the residuary estate of Elizabeth H.
McClure which is the subject of this controversy. If, as the
court below held, Caroline H. McClure took an estate for life
with the power of consumption and power of appointment
over the one-half of the residue of her mother's estate, that
one-half of the estate, by virtue of the exercise of the power
of appointment, became vested in and was distributable to the
six first cousins of Caroline H. McClure, and was properly
awarded to them by the court below. The learned judge has
fully vindicated his conclusions in the opinion disposing of the
exceptions filed to the report of the auditor.

As in the interpretation of all wills, the intention of the
testator in this case must be ascertained from the entire instru-
ment, and when ascertained must be carried into effect. No
canons of interpretation need be invoked here to determine
the intention of the testatrix. The intention of Caroline H.
McClure in disposing of the interest or estate given her by her
mother and over which this controversy arises is perfectly
clear from the language she has used.

Elizabeth H. McClure, by her will, directed that the pro-
ceeds of the residue of her estate should be invested by her
executrix for the sole use and benefit of her daughter, Caro-

line H. McClure, during the latter's lifetime, so that her daughter should receive the annual interest arising therefrom and also so much of the principal as might be necessary or requisite to maintain her daughter, and then provided as follows: " And further I do direct that my said daughter, Caroline H., shall have full power to dispose of by will—by gift or in any other way of the one-half of such moneys, credits or rights or such investments into which they may have been converted at the time of her death or prior thereto." The remaining one-half of her residuary estate she directed to be divided among her grandchildren. Caroline H. McClure was appointed executrix of her mother's estate. At the date of the death of Elizabeth H. McClure, her residuary estate consisted of a single item, a bond conditioned for the payment of $10,850.56. One-half of that sum is the money now in controversy. Caroline H. McClure is dead, and by her will, disposed of the estate given her by her mother. In the sixth clause of her will she directs that the proceeds of her notes, etc., after the payment of her debts, collateral inheritance and other taxes, shall " be paid over to my nephew Humes Hall if he shall be living at the time of my decease subject to all of the provisions and conditions of this my last will and testament." In the seventh clause of the will she gives to her nephew, Humes Hall, " if he be living at the time of my decease, all of the interest in the estate of my mother Elizabeth H. McClure, deceased, devised and bequeathed to me with power in me to dispose of the same, either by will or gift, being the one-half of the residuary of my said mother Elizabeth H. McClure." Immediately following the seventh clause of the will, she provides in a clause she designates " Item " " that in case my nephew Humes Hall shall die prior to my own decease or in case he shall die before my estate is fully settled up by my executor hereinafter named and before the proceeds of my said estate shall have been paid over to my nephew Humes Hall as herein provided then and in that case I do direct that all of my estate together with all interest in and a right to devise will or give the same arising in or through the will of my mother Elizabeth H. McClure deceased which shall then remain in the custody of my executor and which has been herein bequeathed and devised to my nephew Humes Hall

shall be given, devised, and bequeathed and by my executor paid over to my six first cousins," (naming them).

In ascertaining the intention of Caroline H. McClure as to the disposition of the estate which she received from her mother, her whole will must be considered. In the sixth clause it will be observed that the proceeds of her notes, etc., go to her nephew Humes Hall if he be living at the time of the testatrix's decease, "subject to all of the provisions and conditions of this my last will and testament." In the following, or seventh, clause the estate she had received from her mother was given to the same nephew "if he be living at the time of my decease." Both of these clauses, however, are followed by "Item," which is subsequent to and controls both of the clauses immediately preceding it. In "Item," the testatrix changes the time of the vesting in her nephew of both her own estate and the estate she received from her mother. By clauses six and seven of her will Humes Hall is to have the estate she owned in her own right and the estate she received from her mother with power of appointment, if he be living at the death of the testatrix. By "Item," however, the estates given him immediately preceding did not vest in him if he died prior to the decease of the testatrix, or before her estate was fully settled up by the executor and the proceeds had been paid to him. Humes Hall died within a few months after Caroline H. McClure's death, without having received anything under the latter's will. This provision of the will was not simply a postponement of the payment of the proceeds of Caroline H. McClure's estate or of the estate she had received from her mother, but it was a postponement of the vesting of both estates. In other words, in the language of the cases, the time of enjoyment by the legatee of the bequest was annexed to the gift and not to the payment of it. Humes Hall took no interest or estate under the will of Caroline H. McClure unless he was living when the estate was "fully settled up" by the executor and the proceeds were paid over. If the executor had paid over any part of the estate to Humes Hall prior to the time it was "fully settled up," it would not have been a good payment, and the executor would have been subject to a surcharge at the instance of the six first cousins. Of this we think there can be no doubt.

If the language of the will is to have its ordinary meaning, the date of the vesting of the estate in Humes Hall is left in no doubt, and any payment of any part of the estate to him prior to the date of its vesting would have been wholly unauthorized and a devisavit for which the executor would have been responsible.

There is no merit in the suggestion or argument that "Item" does not cover or include that part of Caroline McClure's estate which she received from her mother. It includes both her own estate and the estate she received from her mother, and over which she was given a general power of appointment. In case her nephew Humes Hall died prior to the settlement of the estate it is then provided in "Item" that "All of my estate together with all interest in and the right to devise will or give the same arising in or through the will of my mother Elizabeth H. McClure deceased which shall then remain in the custody of my executor and which has been herein bequeathed and devised to my nephew Humes Hall shall be given devised and bequeathed," etc. It will thus be observed that there is no foundation whatever for the contention that this clause of the will did not dispose of the estate which Caroline H. McClure received from her mother. It does so in terms, and is clearly an exercise of the power conferred upon the testatrix by her mother.

The learned judge of the orphans' court has so fully discussed this branch of the case that nothing more need be said here. The other assignments are without merit.

The decree is affirmed.